THE DEPARTMENT OF REVENUE, Plaintiff-Appellee, *v.* PRESTIGE CASUALTY COMPANY *et al.*, Defendant-Appellant.

First District (1st Division)   Nos. 76-1600 through 76-1607 cons.

Opinion filed January 16, 1979.

Robert J. Lifton, of Neistein, Richman, Hauslinger & Young, Ltd., of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Gregory G. Lawton, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

* This opinion was prepared by Justice Buckley while assigned to the Illinois Appellate Court, First District.

This is a consolidated appeal of eight actions filed in the Circuit Court of Cook County by the Illinois Department of Revenue to recover against bonds provided by Prestige Casualty Co. on behalf of retailers. The bonds were posted as security under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) as a condition for engaging in retail activity.

Appellant Prestige stipulates on appeal that the facts and pleadings are substantially identical in each case, except that the bonds in each case relate to a different taxpayer, and that amounts of tax and judgment amounts differ from case to case.

Accordingly, the first of these cases, No. 76-1600, which is typical, serves as a basis for discussion. The complaint in that case was filed on September 5, 1975, against George's Restaurant and Lounge, and Prestige. The complaint alleged the issuance of a surety bond by Prestige, a copy of which was attached, alleged that the taxpayer was in default in payment of taxes for the period of May 1970 to January 1971, and that demand was made by the Department on October 19, 1971, on Prestige for payment and that Prestige had not complied with that demand. Judgment against Prestige in the amount of the bond was asked.

Prestige appeared, filed a timely jury demand and moved to strike and dismiss the complaint. The Department moved to strike Prestige's jury demand on the ground that there was no issue of fact and amended its complaint to allege service and issuance of a notice of delinquent tax on the taxpayer.

Subsequently Prestige's motion to strike and dismiss was denied and the Department's motion to strike Prestige's jury demand was granted. Prestige then filed an answer asserting several defenses, including the alleged failure of the Department to perform certain conditions, such as making a final assessment against the taxpayer and providing Prestige with adequate notice of the taxpayer's default, and that the Department's action was barred due to the passage of time. Prestige attempted to initiate discovery by filing a notice of deposition, interrogatories and a request for production of documents.

The Department moved to quash Prestige's request for discovery on the grounds that it would be without purpose and also moved for judgment on the pleadings. On July 27, 1976, the circuit court granted both of the Department's motions. Judgment against Prestige in all eight cases was entered on September 15, 1976.

Prestige contends on appeal that it was entitled to a trial by jury because there existed substantial factual issues; that it was entitled to discovery; that judgment on the pleadings was improper because there existed substantial questions of fact; and that the Department's action was barred because the Department failed to proceed against the taxpayers

themselves within the time allowed by the Retailers' Occupation Tax Act.

For the reasons stated below, the judgment of the circuit court is affirmed.

The threshold question in this case is Prestige's contention that the present actions were barred because the Department failed to proceed against the taxpayers themselves within the time period provided under the Retailers' Occupation Tax Act. The Department of Revenue concedes that, at the time it commenced its actions against the bonds here in question, it would have been barred by the passage of time from proceeding against the taxpayers themselves, but contends that the running of the limitation period for action against a principal does not, under Illinois law, bar an action against a surety for bonds of this kind. As authority for this proposition, the Department cites *Stelle v. Lovejoy* (1888), 125 Ill. 352, 17 N.E. 711, in which it was held that an action relating to a supersedeas bond for an appeal was not barred by the fact that the statutory limitation period for an action against the principal had run.

Prestige, on the other hand, contends that the precise question of whether an action against a surety is barred by the running of the limitation period against the principal on the underlying obligation has never been decided in Illinois. Prestige notes that *Stelle v. Lovejoy* stands in contrast to *People ex rel. Stubblefield v. Wochner* (1927), 244 Ill. App. 30, in which an action against a sheriff's bond was held barred because the statutory limitation period had expired for an action based on the alleged misconduct of the sheriff upon which the bond action was predicated.

Both Prestige and the Department offer authority from other jurisdictions in support of their positions as to whether an action against a surety is barred when the statutory limitation period for an action against the principal has run. The Department offers the Restatement of the Law of Security §130(1) (1941) as authority for its view, and Prestige notes that in *Stubblefield* language supporting its view was employed.

Two observations are necessary before pursuing the issue upon which the parties to this appeal have joined. First, the present case deals with particular bonds created to serve a particular purpose under a particular statute, so that the issue before this court is narrowly framed by the facts. Second, if, as the parties both argue, bonds are subject strictly to the principles of suretyship, then the issue as framed by the parties has already been decided in this State, with conflicting outcomes.

We believe, however, that the proper interpretation of the *Stelle* and *Stubblefield* decisions is that they are consistent applications of the principles relating to bonds, notwithstanding the presence of strongly worded *dicta* in *Stubblefield* relating to suretyship which would preclude a result such as that in *Stelle*.

An examination of *Stubblefield* demonstrates clearly that, although

language regarding sureties was used in that decision, the action in question was against a bond, and that bond was of a type quite different from the bonds here in question. In *Stubblefield* the bond was a sheriff's bond, and the action against it was premised on alleged misconduct of the sheriff. It was noted that, because no action had been filed against the sheriff during the statutory limitation period, evidence of the existence or nonexistence of misconduct by the sheriff would present problems of the same kind and degree as in an action against the sheriff, and that the likelihood of such problems was precisely the reason that actions against the sheriff were barred. It was concluded that the same reasons which supported a bar of actions against the sheriff militated against allowing the action on the bond.

In contrast, *Stelle* dealt with an appeal bond furnished to secure payment of a debt already adjudicated. In the judgment creditor's action for satisfaction from the bond, the surety asserted that, because the five-year limitations period for an action on the original debt had run, the creditor's action against the surety was barred. The supreme court rejected this argument, reasoning that the purpose of limiting the action on the underlying debt was not applicable to an action against a bond because there were no evidentiary problems related to the underlying debt which would affect an action on the bond. Accordingly, it was determined that the 10-year limitation period for actions against written instruments was applicable.

■■ Clearly the distinction between *Stubblefield* and *Stelle* is the nature of the bonds in each case. That such a distinction is meaningful is apparent from the fact that under Illinois law bonds are to be construed in light of both their purpose and the statute upon which they are premised (*Martin v. Clarke* (7th Cir. 1939), 105 F.2d 685; *Chicago Housing Authority v. U.S. Fidelity & Guaranty Co.* (1964), 49 Ill. App. 2d 407, 199 N.E.2d 217).

■ Accordingly, the resolution of the present issue does not call for mechanical application of *Stelle, Stubblefield* or principles of surety contained in them or elsewhere. What is required is construction of the present bonds in light of the Retailers' Occupation Tax Act.

The bonds in question contain simply a promise to pay up to a fixed limit unless the taxpayer involved is not delinquent in tax payments under the Act. No expiration date is provided, there being instead a provision that the bond may be cancelled upon 90 days' notice to the Department. The bond was created pursuant to section 2a of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 441a), which requires retailers to provide the Department of Revenue with some form of security for payment of taxes. Bonds are but one form of security permitted.

Under section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat.

1977, ch. 120, par. 443), when the Department notifies a taxpayer of delinquent tax liability, the taxpayer has 20 days to file a protest and request a hearing, or the assessment becomes final. In the present case, the taxpayers' liability was determined from their own tax returns, the requisite notices were provided to them, and no protests or requests for hearings were made.

Actions against security posted under section 2a are provided for in that section by the following language:

"With respect to security other than bonds (upon which the Department may sue in the event of a forfeiture), if the taxpayer fails to pay, when due, any amount whose payment such security guarantees, the Department shall, after such liability is admitted by the taxpayer or established by the Department through the issuance of a final assessment that has become final under the law, convert the security which that taxpayer has furnished into money for the State, after first giving the taxpayer at least 10 days' written notice, by registered or certified mail, to pay the liability or forfeit such security to the Department." Ill. Rev. Stat. 1977, ch. 120, par. 441a.

The limitation period about which the parties' arguments center is contained in section 5 of the Retailers' Occupation Tax Act. The language in that section clearly refers only to actions against taxpayers, leaving the question of limitations for actions against security posted under section 2a unanswered. Section 5a provides for actions to obtain liens against delinquent taxpayers' property and requires that such actions be commenced within two years. Sections 5e and 5f provide for enforcement of such liens against realty or personalty, and require that enforcement actions commence within five years of establishment of a lien. Section 6, which governs refunds, provides that the Department shall not release excess funds to taxpayers who overpaid unless certain conditions are met, including making deductions for any taxes owed to the Department for another reporting period or under another tax statute.

There is no language in the act which expressly indicates how the Department is to proceed regarding bonds offered as security if the taxpayer who provided that security becomes delinquent in tax payments, and there is no language expressly indicating that the bonds provided by Prestige are to be given any sort of special treatment. Indeed, the one clause in which actions on bonds of this type are mentioned, section 2a, suggests that such actions would proceed in an ordinary fashion.

Nor does the overall form of the act imply any special treatment for security bonds provided under it. Limitations periods for actions under the act are expressly limited as to subject matter, with actions against

taxpayers, actions to obtain liens, and actions to foreclose liens carefully delineated as subject to differing time limitations. The careful inclusion of these actions strongly implies exclusion from limitation provisions of other forms of action under the maxim *"expressio unius est exclusio alterius." Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.

On the contrary, the framework of limitations periods created by the Act establishes a policy of limiting actions which jeopardize taxpayers' previously free assets to a two-year period while permitting actions against previously encumbered taxpayer assets for a period of five years. Under this policy framework, an action against a bond posted by a taxpayer would clearly come under the latter, if any of these special limitations period were applicable.

However, because the actions in the present case were brought within five years of the date upon which the limitation period began to run, the issue of whether the five-year limitation provided under the Retailers' Occupation Tax Act, the five-year period of limitations provided for actions on statutory liabilities under section 15 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 16) (see *Mueller v. Bittle* (1943), 321 Ill. App. 363, 53 N.E.2d 56), or the 10-year period for actions on written instruments under section 16 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 17) is not properly before this Court. It is sufficient for disposition of this appeal to determine merely whether the two-year limitation period for actions against taxpayers under the Retailers' Occupation Tax Act is applicable to an action against bonds provided as security under that act.

■■ Because we find nothing in the act indicating an intent to so limit such actions, imposition of such a limitation is without statutory basis. In returning to the case law on this area, we find that the *Stubblefield* rationale is applicable to the present action because here, as in *Stubblefield*, the evidentiary issues relating to the underlying debt or obligation have already been timely resolved because the Department's assessment of tax liability became conclusive due to the taxpayers' failure to appeal it (Ill. Rev. Stat. 1977, ch. 120, par. 443; *Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216, 311 N.E.2d 691), so that no prejudice to the defendant under the present actions can arise from stale evidence as to that obligation.

■■ Accordingly, we hold that the present actions were not barred by the running of the limitation period for an action against the taxpayers themselves.

■■ Prestige also frames its argument that the present actions are barred by the passage of time in terms of laches and estoppel. However, actions by the State are generally not susceptible to these equitable defenses (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973),

56 Ill. 2d 210, 221, 306 N.E.2d 7; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437), and the pleadings in these cases provide no basis for inferring the existence of such extraordinary circumstances of fraud or injustice as might call for removal of State immunity to these defenses (see *Austin Liquor Mart, Inc.*). Accordingly, these actions were not barred by estoppel or laches.

Three arguments by Prestige remain, relating to dismissal of Prestige's jury demand, denial of Prestige's motion for discovery and granting of judgment for the Department on the pleadings.

We begin with the issue of judgment on the pleadings. As Prestige points out, where the pleadings put in issue one or more material facts, a judgment on the pleadings may not be entered. *In re Estate of Sullivan* (1972), 5 Ill. App. 3d 118, 283 N.E.2d 345; *Habada v. Graft* (1975), 33 Ill. App. 3d 810, 338 N.E.2d 255.

In the present case, however, Prestige's answer did not raise any material issue of fact. As stated above, the issue of tax liability was previously conclusively determined (*Calderwood v. Mahin*), and the issue of liability of Prestige under the bond was strictly a matter of interpretation of the language of the bonds, which was a question of law and not of fact (*Kern Hotel & Tavern, Inc. v. Home Insurance Co.* (1975), 30 Ill. App. 3d 196, 332 N.E.2d 197). Because the only condition in the bonds was that they would be void if the taxpayers paid all sums due to the Department, the factual matters raised by Prestige such as conduct by the Department were not material to the issue of recovery under the bonds.

■■ As a result, judgment on the pleadings was proper. (*Kravis v. Smith-Marine, Inc.* (1974), 20 Ill. App. 3d 483, 314 N.E.2d 577.) Likewise, because there were no material issues of fact, there would have been no purpose to discovery, so that denial of Prestige's motion for discovery was not error, since no ultimately admissible facts could have been discovered. (See *Monier v. Chamberlain* (1966), 66 Ill. App. 2d 472, 213 N.E.2d 425, *aff'd* (1966), 35 Ill. 2d 351, 221 N.E.2d 410.) Similarly, because the pleadings presented no material issue of fact, Prestige was not entitled to a jury trial (*Yates v. Cummings* (1972), 4 Ill. App. 3d 899, 282 N.E.2d 261), although it was technically improper for the trial court to dismiss Prestige's jury demand before Prestige filed its answer, since that answer might have raised material issues of fact such as mistaken identity of the defendant.

For the foregoing reasons, the judgments of the circuit court in these actions are affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.