IRVING R. ZIMMERMAN *et al.*, Plaintiffs-Appellants, v. NORTHFIELD REAL ESTATE, INC., *et al.*, Defendants-Appellants.

First District (3rd Division) Nos. 86—254, 86—264, 86—2280 cons.

Opinion filed December 31, 1986.—Modified on denial of rehearing June 30, 1987.

156

Steinberg & Steinberg, Ltd., of Chicago (Charles M. Steinberg and Frances S. Steinberg, of counsel), for appellants.

John O. DeMaret & Associates, of Chicago (David A. Belofsky, of counsel), for appellee Mary Lou Dunn.

Lurie, Sklar & Simon, Ltd., of Chicago (Paul M. Lurie and Mark C. Friedlander, of counsel), for appellees Northfield Real Estate, Inc., and Ellen A. Reed.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Irving R. and Geraldine C. Zimmerman, purchased a single-family residence and later discovered that the lot size was smaller than they had thought and that the home had numerous defects. Plaintiffs filed this action, alleging fraud, negligent misrepresentation, and certain statutory violations, against defendants, Northfield Real Estate, Inc., and its agent Ellen A. Reed (brokers), and sellers William Dunn and Mary Lou Dunn, who is now known as Mary Lou Steinbach.

Count I of the complaint alleges common law fraud against all defendants, and the trial court dismissed the common law fraud action against the brokers. The court denied the motion to strike and dismiss the common law fraud count against the sellers. Count II al-

leges negligent misrepresentation by all defendants, and that count was dismissed as to all defendants. Count III alleges violations by all defendants of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 262), and that count was dismissed as to all defendants. Count IV sets forth a private cause of action under the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, par. 5701 *et seq.*) against the brokers, and that count was also dismissed. Plaintiffs appeal from the dismissal of these counts. Defendant Steinbach cross-appeals from the order denying her motion to dismiss count I, and this court granted her leave to appeal from the interlocutory order. Appellee William Dunn has not filed an appearance or brief in this court.

The complaint alleges that during the period of April to October 1983, plaintiffs visited the sellers' home in Northfield, Illinois, several times. In October 1983, plaintiffs signed a contract with the sellers, agreeing to pay $325,000 for the home. The contract included an exculpatory clause:

"10(j). Purchaser acknowledges for the benefit of Seller and for the benefit of third parties that neither the Seller, broker nor any of their agents have made any representations with respect to any material fact relating to the real estate, its improvements and included personal property unless such representations are in writing and further that Purchaser has made such investigations as Purchaser deems necessary or appropriate to satisfy Purchaser that there has been no deception, fraud, false pretenses, misrepresentations, concealments, suppressions or omission of any material fact by the Seller, the Broker, or any of their agents relating to the real estate, its improvements and included personal property."

The trial court granted defendants' motion to strike and dismiss all counts in the complaint with prejudice except for the common law fraud count against the sellers. The court found that pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) the portion of its order dismissing all counts against the brokers was a final and appealable order. In regard to the sellers, the court found, pursuant to Supreme Court Rule 308(a) (87 Ill. 2d 308(a)), that substantial ground for difference of opinion existed as to certain questions, *i.e.*, whether the facts alleged in count II state a negligence cause of action against the sellers, and whether the facts alleged in count III state a consumer fraud cause of action against the sellers. On August 30, 1985, plaintiffs filed a post-judgment motion which included a request for leave to file a supplemented amended complaint. On January 16, 1986, the

trial court denied that motion.

Initially we address Steinbach's contention that this court is without jurisdiction to consider any questions except those certified by the trial court. Rule 308 provides for interlocutory appeals by permission where substantial ground for difference of opinion exists on a question of law and immediate appeal could materially advance the ultimate termination of the litigation. (87 Ill. 2d R. 308.) Review by the appellate court is limited to those questions certified by the trial court. (*Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 416 N.E.2d 1110.) We agree with Steinbach that as to the sellers only the two questions certified by the trial court are before us on appeal.

The broker defendants argue that plaintiffs have relied on facts not alleged in the original complaint. We note that while the trial court order states that defendants' motion to dismiss was granted pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), the brokers' motion specified neither section 2—615 nor section 2—619. The trial practice of failing to designate whether a motion to dismiss is brought under section 2—615 or section 2—619 should not be countenanced by trial courts. (*Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360.) Although materials outside of the complaint may be considered under section 2—619 or section 2—1005, a section 2—615 motion to dismiss for failure to state a cause of action admits all well-pleaded facts and attacks only the complaint's legal sufficiency. (*Curtis v. Cook County* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942, *aff'd in part, rev'd in part on other grounds* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) Although the trial court considered the answers to interrogatories, it was not prejudicial where our findings are based only upon a review of the original complaint. See *Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 475 N.E.2d 1342.

A complaint must be legally sufficient in order to state a cause of action. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 443 N.E.2d 1162.) In determining whether a complaint states a cause of action, courts liberally construe the complaint so that controversies are determined on their merits. (*Borushek v. Kincaid* (1979), 78 Ill. App. 3d 295, 397 N.E.2d 172.) A reviewing court should interpret facts alleged in a complaint in a light most favorable to plaintiff, and the complaint should not be dismissed unless the pleading discloses no set of facts, if proved, under which plaintiff could recover. (*Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 444 N.E.2d 253.) A pleading must show only the possibility of recovery,

not an absolute certainty, and it should not be dismissed unless it appears that the pleader in no event would be permitted to recover. *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 443 N.E.2d 626.

■■ ■ Plaintiffs contend that the trial court erred in dismissing the common law fraud count against the brokers. Defendant Steinbach cross-appeals from the trial court order denying her motion to dismiss the common law fraud count against the sellers. The requisite elements of a common law fraud cause of action are that a false statement of material fact was intentionally made, that the party to whom the statement was made had a right to rely on it and did so, that the statement was made for the purpose of inducing the other party to act, and that reliance by the person to whom the statement was made led to his injury. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) Intentional concealment of a material fact is the equivalent of a false statement of material fact. (*Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047.) Where a person has a duty to speak, his failure to disclose material information constitutes fraudulent concealment. *Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127.

■ The complaint sufficiently alleges that the broker defendants intentionally concealed, or made statements in regard to, material facts. The complaint alleges that the brokers knew the lot size was less than one acre, knew the bathtubs and plumbing drain tile system did not work properly, knew the basement had four or five leaks, knew the south and east walls were badly deteriorated by moisture, knew the living-room wall contained a substantial hole, and knew the basement had suffered massive flooding of up to four feet of water.

The trial court based its dismissal of the fraud count against the brokers partly on its belief that the complaint did not allege that the brokers "actively engaged in a course of conduct designed to deceive." The complaint alleges, however, that the brokers intentionally, with intent to deceive, issued a multiple listing sheet falsely advertising the lot size as one to three acres, or 43,650 square feet (equal to one acre).

The trial court also based its dismissal of the fraud count on its belief that the "only parties that could be concealing would seem to me to be the sellers." The court cited examples of wallpapering over cracks and leaks and stated it did not believe "that the real estate broker could conceivably be guilty of that." Other well-pleaded facts, however, sufficiently allege the brokers' knowledge and fraudulent conduct. The complaint alleged that defendant Reed lived next door

to the Dunn home for at least five years and was previously employed by the developer of the subdivision which had divided and sold much of the land surrounding the Dunn home. From these allegations it is reasonable to infer that Reed knew of the flooding and of the lot size.

■ The complaint also sufficiently alleged that the brokers had a duty to speak regarding material information of which they had knowledge. Realtors have a duty to disclose material facts under the Real Estate Brokers and Salesmen License Act. (Ill. Rev. Stat. 1981, ch.111, par. 5701 *et seq.*) Real estate brokers and salespersons occupy a position of trust with respect to purchasers with whom they are negotiating and owe a duty to exercise good faith in their dealing with such purchasers even absent the existence of an agency relationship. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849; *Richmond v. Blair* (1985), 142 Ill. App. 3d 251, 488 N.E.2d 563.) Thus, the brokers' silence may constitute fraudulent concealment of material facts. (*Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127.) The broker defendants had a duty to disclose the massive flooding problems and the actual lot size. Concealment or misrepresentation of these material facts was fraudulent. Whether the brokers had knowledge of other claimed patent defects may be adduced at trial.

■ Plaintiffs sufficiently allege that the omissions and false statements were of material facts. A misrepresentation is material and therefore actionable if it relates to a matter upon which plaintiff could be expected to rely in determining whether to engage in the conduct in question. (*Shah v. Chicago Title & Trust Co.* (1983), 119 Ill. App. 3d 658, 457 N.E.2d 147.) Here, in deciding whether to buy the home, plaintiffs could be expected to rely upon representations and omissions regarding matters relating to lot size, flooding, leaks, and other defects in the home, and thus the matters are material. Defendants refer to the massive flooding, which neighbors call "Dunn's Lake," as a mere "puddling." Defendants also refer to the 40% lot size difference as "somewhat smaller" and as being "not incorrect by much." We find defendants' characterizations unpersuasive.

■ The complaint further alleges that plaintiffs' relied on the statements or silence and thereby acted to their detriment. Plaintiffs discovered the defects after signing a contract of sale, making a down payment, and taking possession. Plaintiffs also sufficiently allege that the statements were made for the purpose of inducing them to buy the house. A party is considered to intend the necessary consequences of his own acts. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.) As a proximate result of these affirmative misrepresen-

tations, concealments, and omissions, plaintiffs allege they were required to spend large sums to cure the physical defects and that they now own a lot worth considerably less than the sale price because of the lot size, which measured 40% less than the one acre advertised. Thus, we find the complaint states a cause of action for fraud against the broker defendants. (But see *Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 277 N.E.2d 769 (court held insufficient showing of fraudulent concealment where realtors knew of flooding but made no statement regarding, and took no steps to actively conceal, flooding from purchasers).) The trial court erred in dismissing count I as to the broker defendants, and properly denied Steinbach's motion to dismiss count I as to the seller defendants.

We agree with defendants that the multiple listing description of the house as "magnificent" and "comfortable" is a subjective description and cannot qualify as a fraudulent misrepresentation of fact. See *Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 466 N.E.2d 1040.

Plaintiffs next contend that the trial court erred in dismissing count II, which set forth negligent misrepresentation causes of action against both the brokers and the sellers. The elements of a negligent misrepresentation cause of action include a duty owed by defendant to plaintiff, a breach of such duty, and injury proximately resulting from such breach. (*Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623.) Count II of the complaint alleges that defendants had a duty to act with a reasonable degree of care to ascertain, disclose, and not conceal the material facts regarding the lot size, flooding, and other defects; that defendant acted negligently, breaching this duty; and as a proximate result plaintiffs were required to spend sums to cure the physical defects, and plaintiffs owned less valuable property.

The test of negligent misrepresentation involves the breach of a duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their economic affairs. The misrepresentations may result from failing to provide adequate information when there is a duty to do so, as well as providing information which is false. The person making a representation may believe it to be true, but because of negligent expression it is in fact false. (*Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 484 N.E.2d 473.) We have already found that the broker defendants had such a duty and breached it. (See *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849.) A realtor has no duty to prospective buyers to independently substanti-

ate the representations of a seller unless the realtor is aware of facts which tend to indicate that such a representation is false. (*Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623.) We have found that the complaint sufficiently alleges the broker defendants' knowledge of the flooding and lot size. Thus, plaintiffs have stated a cause of action for negligence against the broker defendants.

Plaintiffs here have not shown a loss beyond a consumer's commercial expectation and therefore have suffered only an economic loss, which is generally not recoverable in negligence actions. (See *Morrow v. L. A. Goldschmidt Associates, Inc.* (1985), 112 Ill. 2d 87, 492 N.E.2d 181; *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.) However, a plaintiff may recover solely economic losses in tort against those in the business of supplying information for the guidance of others in their business transactions. (91 Ill. 2d 69, 435 N.E. 2d 443.) Realtors are in the business of supplying such information. (*Richmond v. Blair* (1985), 142 Ill. App. 3d 251, 488 N.E.2d 563.) Consequently, plaintiffs may recover economic losses from the broker defendants.

The sellers do not fall within the *Moorman* exception and thus plaintiffs cannot recover the economic losses they seek from the sellers under this negligence count. (See *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324; *Swaw v. Ortell* (1984), 137 Ill. App. 3d 60, 484 N.E.2d 780.) Damages for economic loss may be recovered, however, in a tort action where intentional misrepresentation is sufficiently alleged. (*Richmond v. Blair* (1985), 142 Ill. App. 3d 251, 488 N.E.2d 563.) Plaintiffs' cause of action against the sellers for intentional fraud, therefore, supports plaintiffs' request for damages incurred as a result of economic losses.

Plaintiffs argue that they have no contract action against the sellers and thus we should allow the negligence action to stand. Whether another remedy is available to plaintiffs is immaterial under the *Moorman* rule. *East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 90 L. Ed. 2d 865, 106 S. Ct. 2295; *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246.

In regard to both the fraud count and the negligence count, defendants raise arguments concerning the exculpatory clause and the reasonableness of plaintiffs' reliance. Defendants argue that the contract's exculpatory clause quoted above protects them from liability for fraud. An exculpatory clause cannot protect persons from the results of their wilful and wanton misconduct. (*Davis v. Common-*

*wealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881; *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) Such a contractual shield is illegal. (*Third Swansea Properties, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 354 N.E.2d 148.) We have found that count I sufficiently states a cause of action for fraud, which is an intentional tort. Thus, the exculpatory clause in the present case would not shield defendants from liability for fraud.

Defendants also rely heavily on the exculpatory clause as a defense to the negligence count. Initially we note that the exculpatory language in question does not include "such representations [which] are in writing." Thus, the representations regarding lot size which were made in the multiple listing sheet and in the sales contract are not included under the exculpatory clause.

 Exculpatory clauses are not favored and are strictly construed and must have clear, explicit, and unequivocal language showing that it was the intent of the parties. (*Poskozim v. Monnacep* (1985), 131 Ill. App. 3d 446, 475 N.E.2d 1042.) An exculpatory clause for simple negligence is valid unless it violates public policy or involves certain semipublic relationships. (*First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.) One cannot exempt himself from negligence by a contractual exculpatory clause in cases where a positive duty has been imposed by law. (*Cerny Pickas & Co. v. C. R. Jahn Co.* (1952), 347 Ill. App. 379, 106 N.E.2d 828.) The public policy of the State may be found in its statutes and judicial decisions. *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 403 N.E.2d 1325.

 Section 1 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, par 5701 *et seq.* (repealed, now the Real Estate License Act of 1983 (Ill. Rev. Stat. 1983, ch. 111, par. 5801 *et seq.*), effective January 1, 1984) states that the legislature's intent in enacting the statute is to protect the public. (Ill. Rev. Stat. 1981, ch. 111, par. 5701.) In *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849, our supreme court found that the plain purpose of the Act is to protect the public from incapable or dishonest persons who might aid in the perpetration of fraud. The legislature intended to compel brokers to practice their profession honestly and with integrity. The court also found that the broker owes an obligation to the prospective buyer because the broker occupies a position of trust and thus must exercise good faith. Moreover, the Department of Registration and Education regulations require a broker to disclose all material knowledge to any and all purchasers. (Illinois Department of Registration and Education, Regulation V(A), autho-

rized by Ill. Rev. Stat. 1981, ch. 111, par. 5715(a).) These rules have the same force and effect as statutes. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849.) We find that based on the specific duty which the law imposes on brokers, the overriding public policy expressed by the legislature in the Act, and the court's holding in *Sawyer Realty*, this court's enforcement of the exculpatory clause in favor of the broker defendants would violate public policy.

■■ Defendants maintain, in regard to the fraud count, that plaintiffs' reliance was unreasonable. Steinbach contends that her statement to plaintiffs that the basement had one leak "effectively disclosed the existence of the flooding problem." Using the Titanic as an example, she argued that it is the quantity of water leakage, not the number of leaks, which is important. The statement that only one leak existed, however, may have left the buyers with a false sense of security. Where a plaintiff's inquiries are inhibited by a defendant's statements which create a false sense of security, the plaintiff's failure to investigate further is not fatal. (*Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335.) Steinbach relies on *Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 453 N.E.2d 932, where the court held that a person may not enter into a transaction with his eyes closed to available information. Steinbach argues that plaintiffs did not "seek to look behind the [basement wall] panelling which covered the disclosed defects." We find these arguments to be without merit. We cannot say as a matter of law that plaintiffs closed their eyes to available information by not ripping down the panelling in an effort to discover the true extent of the leakage and flooding damage after defendant told them there was only one leak. Furthermore, even if plaintiffs were guilty of failing to insist on verification of the size of the lot and condition of the home, the cause of action stated in count I is for fraud, an intentional tort, and defendants' liability generally cannot be defeated by an assertion of plaintiffs' negligence. See *Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127; *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335; *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 39.

■■ ■ Defendants argue further that plaintiffs were not justified in relying on the statements and omissions at issue in regard to the negligence count. Whether an injured party justifiably relied upon defendants' words or silence depends on the surrounding circumstances. (*Central States Joint Board v. Continental Assurance Co.*

(1983), 117 Ill. App. 3d 600, 453 N.E.2d 932.) A party is not justified in relying on representations made when he had an ample opportunity to ascertain the truth of the representations. (117 Ill. App. 3d 600, 453 N.E.2d 932.) The question of whether defendants had a right to rely on the broker defendants' representations and omissions regarding the size of the lot and the defects in the home must be answered in light of all of the facts which plaintiffs had actual knowledge of as well as those which they might have discovered by the exercise of ordinary prudence. (See 117 Ill. App. 3d 600, 453 N.E.2d 932.) This raises substantial questions of fact. Under the circumstances presented here, the issue of reasonable reliance is for the trier of fact. Based on the pleadings, we are not prepared to say that plaintiffs will not be able to prove any set of facts which will demonstrate reasonable reliance. (See *Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127; *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) Reasonable inferences from the complaint are sufficient to find that an ordinary inspection would not have disclosed the defects at issue here.

Moreover, the contract states that plaintiffs made any "necessary" or "appropriate" investigations. At this stage of the pleadings, we cannot hold as a matter of law that plaintiffs should have known that a professional survey to measure the acreage was necessary. Persons may reasonably rely on a judgment where the broker or seller has some expert knowledge due to his previous work with the developer of the property. (See generally Annot., 90 A.L.R.3d 568 (1979).) Here, it is reasonable to infer from the complaint's allegations that Reed had special knowledge of "Dunn's Lake" and the flooding problems because she had lived next door for at least five years and had knowledge of the lot size because she had previously worked for the developer of the property.

We acknowledge defendants' contention that plaintiffs had a copy of the property survey. The survey, however, tells a purchaser very little because it does not give square-foot information and a typical buyer cannot read the survey language. Furthermore, defendants' argument that plaintiffs received the lot they sought, according to the property's legal description of the boundaries, is a matter for the trier of fact. Cases cited by defendants for the proposition that a proper legal description will control over any misdescription of the property's total acreage are distinguishable. In *Dillenberger v. Ziebold* (1979), 70 Ill. App. 3d 585, 388 N.E.2d 936, the auctioneer selling the real estate announced the total acreage on the sale bill was incorrect and that he was selling the farm as described on the plat. In *Meyer v. Ranson*

(1967), 80 Ill. App. 2d 175, 224 N.E.2d 293, the cause of action was based in contract and the issues involved mutual mistake. Here, the action is based in tort and the issues involve fraudulent and negligent misrepresentations. The *Meyer* court specifically restricted the holding to cases where the parties acted in good faith and no fraudulent representations had been made. 80 Ill. App. 2d 175, 181, 224 N.E.2d 293, quoting *Binder v. Hejhal* (1931), 347 Ill. 11, 178 N.E. 901.

■■■ Plaintiff's next contend that the trial court erred in dismissing count III of the complaint, which alleged that all defendants violated section 262 of the Consumer Fraud Act (Ill. Rev. Stat. 1983, ch. 121½, par. 262). The trial court dismissed this count based on its belief that the Act only applies to merchants who are involved in the trade.

This court has held that section 262 of the Act applies to intentional misrepresentations made by real estate brokers to prospective purchasers. (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448.) The broker must know of the false, misleading, or deceptive character of the information he communicates. (Ill. Rev. Stat. 1983, ch. 121½, par. 270(b)(4).) Section 262 expands a consumer's rights beyond those of the common law and provides broader protection than does the common law action of fraud. (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) Thus, plaintiffs need not establish all of the elements of fraud. A plaintiff need not show actual reliance or diligence in ascertaining the accuracy of misstatements. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 485 N.E.2d 855.) We have already held that the complaint sufficiently alleged the elements of fraud. Our finding that plaintiffs have stated a cause of action for fraud is sufficient to warrant the conclusion that the same acts violate the Consumer Fraud Act because the Act prohibits any misrepresentation at all. The trial court erred in dismissing count III as to the brokers.

■■■ As to the sellers, the complaint alleges that the sellers "were conducting the trade or commerce of selling real estate." We find no support in Illinois law for the proposition that an individual selling his own home is liable to a purchaser under the Consumer Fraud Act. The court in *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448, only addressed the counts against the broker although the complaint apparently alleged a statutory violation by the sellers. In *Grimes v. Adlesperger* (1978), 67 Ill. App. 3d 582, 384 N.E.2d 537, the court found the seller of commercial real estate violated the statute when he misled the buyers as to profit calculations.

*Grimes* differs from the present case, which involves only two individuals and a casual sale of a single-family home. We decline to extend the scope of the Consumer Fraud Act to individual sellers of single-family dwellings. The trial court properly dismissed count III as to the sellers.

Plaintiffs finally contend that the trial court erred in dismissing count IV of the complaint, which alleges that defendant brokers violated the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, par. 5701 *et seq.*). A private right of action exists under the License Act. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849.) As we have stated, the relevant rule requires realtors to disclose any and all material knowledge. (Rule V(A).) Here, the alleged omissions and misrepresentations are the same as those upon which count I for fraud and count II for negligent misrepresentations are based, and the complaint sufficiently alleges facts to support these counts. Thus, plaintiffs have stated a cause of action against the brokers under the License Act. The trial court erred in dismissing count IV.

In sum, we do not, of course, reach the merits of the causes of action at this stage, but we hold that plaintiffs have pleaded legally recognized causes of action against the broker defendants for common law fraud, common law negligence, violations of the Consumer Fraud Act, and violations of the Real Estate Brokers and Salesmen License Act. The trial court erred in dismissing counts I, II, III, and IV as to the broker defendants. Plaintiffs have pleaded a legally recognized cause of action against the seller defendants for common law fraud, and the trial court properly denied the motion to dismiss that count. Plaintiffs have failed to plead legally recognized causes of action against the seller defendants for common law negligence and for violations of the Consumer Fraud Act. The trial court properly dismissed counts II and III as to the seller defendants.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Judgment affirmed in part; reversed in part, and remanded.

RIZZI, P.J., and WHITE, J., concur.