**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210434-U

Order filed November 7, 2022

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| SARAH HERRON, Independent Administrator of the Estate of Donald Herron, Deceased, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| IOWA HEALTH SYSTEM d/b/a UNITYPOINT HEALTH-METHODIST, a Foreign Corporation; THE METHODIST MEDICAL CENTER OF ILLINOIS d/b/a METHODIST, an Illinois Corporation; LINDA OKRA-BOATENG, M.D. a/k/a LINDA AMANKWAH, M.D.; COMPREHENSIVE EMERGENCY SOLUTIONS, S.C. d/b/a COMPREHENSIVE SCRIBE SOLUTIONS, S.C., an Illinois Corporation; KIMANTI A. FITZGERALD, R.N. and SARINA A. WEIBERG, R.N., | ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-21-0434 Circuit No. 18-L-3 |
| Defendants | ) ) | |
| (Iowa Health System d/b/a Unitypoint Health-Methodist, The Methodist Medical Center of Illinois d/b/a Methodist, Kimanti A. Fitzgerald, R.N. and Sarina A. Weiberg, R.N., | ) ) ) ) ) ) | |
| Defendants-Appellees). | ) ) | Honorable Bruce Fehrenbacher, Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice O'Brien and Justice Holdridge concurred with the judgment.

## ORDER

¶ 1     *Held*:   The trial court did not err in granting defendants' motion to compel disclosure of decedent's mental health records. However, the court failed to perform the required *in camera* inspection of the records. We vacate the contempt finding and the accompanying fine imposed against plaintiff.

¶ 2     Plaintiff, Sarah Herron, as the independent administrator of the estate of her husband, Donald Herron, appeals a discovery order granting defendants' motion to compel disclosure of Donald's mental health records. She refused to disclose the records and the court held her in contempt. She contends the records are privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (740 ILCS 110/1 *et seq*. (West 2020)). We affirm in part and vacate in part, as modified.

¶ 3                                                 I. BACKGROUND

¶ 4     Plaintiff filed a second amended complaint as the independent administrator of the estate of her deceased husband, Donald. Donald was transported to Methodist Hospital's emergency room for treatment related to a reported overdose of blood pressure medication. Dr. Linda Okra-Boateng, M.D., learned that Donald had attempted suicide by ingesting metoprolol and other medications. Donald's blood pressure continued to drop until he died. Plaintiff's second amended complaint contained 16 counts premised on the alleged negligent treatment provided by defendants. Relevant to this appeal are the eight survival claims brought on behalf of Donald. Each survival claim alleged that "[a]s a direct and proximate result of the foregoing negligent acts and/or omissions, Donald Herron had a cause of action for said conscious pain and suffering, mental anguish and emotional distress, medical expenses, disability, and loss of a normal life[.]"

¶ 5        Defendants filed a joint motion to compel the execution of an authorization form to obtain Donald's mental health records. Defendants claimed that plaintiff placed Donald's mental health condition at issue. In response, plaintiff argued that the mental health records were privileged under the Mental Health Act. Plaintiff asserted that she did not seek any psychiatric, psychological, or emotional damages on behalf of Donald.[1]

¶ 6        On July 6, 2021, the trial court granted defendants' motion to compel on the ground that "[Donald]'s mental health at the time of the occurrence directly relates to issues of liability." The court did not perform an *in camera* inspection of the records. Instead, the court ordered plaintiff to provide the executed authorization form to defendants within 30 days.

¶ 7        On August 9, 2021, defendants moved for an order finding plaintiff in contempt for failing to comply with the court's July 6 discovery order. The court held plaintiff in contempt and imposed a $100 fine.

¶ 8                                    II. ANALYSIS

¶ 9        On appeal, plaintiff argues the trial court erred in finding her in contempt when she failed to provide defendants with the executed authorization form for Donald's mental health records. Where an individual appeals a finding of contempt for violating a discovery order, the contempt finding is final and appealable, presenting to a reviewing court the propriety of the discovery order. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002). The applicability of a statutory evidentiary privilege, and any exceptions, are matters of law that we review *de novo*. *Sparger v. Yamini*, 2019 IL App (1st) 180566, ¶ 16.

---

[1]We note that had plaintiff simply amended the complaint, removing any claim for "mental anguish and emotional distress," or agreed to an order barring any such claim, this appeal may have been avoided.

¶ 10    The parties agree the records qualify as mental health records that are normally privileged under the Mental Health Act. The parties dispute whether plaintiff waived the therapist-recipient privilege under the Mental Health Act by placing Donald's mental condition at issue. Defendants contend that plaintiff's complaint affirmatively introduced Donald's mental health condition as an element of her claim.

¶ 11    Before turning to the merits, we first address plaintiff's contention that defendants forfeited this specific argument by failing to raise it in the trial court. A party seeking to affirm the trial court does not forfeit an argument which is supported by the record. This is true, as we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992). Therefore, we reject plaintiff's argument.

¶ 12    Returning to the merits, we must determine whether, as a matter of law, the mental health records in this case fell within an exception to the protective privilege provided by the Mental Health Act. Our review is *de novo*. *D.C. v. S.A.*, 178 Ill. 2d 551, 559-61 (1997).

¶ 13    The Mental Health Act provides, in relevant part:

> "(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.
>
> ***
>
> (2) Records or communications may be disclosed in a civil proceeding after the recipient's death when the recipient's

physical or mental condition has been introduced as an element of a claim or defense by any party claiming or defending through or as a beneficiary of the recipient, provided the court finds, after in camera examination of the evidence, that it is relevant, probative, and otherwise clearly admissible; that other satisfactory evidence is not available regarding the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from any injury which disclosure is likely to cause." 740 ILCS 110/10(a)(2) (West 2020).

"A party may introduce his or her mental condition in several ways during the course of litigation, including, *e.g.*, in the pleadings, answers to written discovery, a deposition, in briefs or motions, in argument before the court, or by stipulation." *Reda*, 199 Ill. 2d at 61.

¶ 14 For example, in *Phifer v. Gingher*, 2017 IL App (3d) 160170, this court analyzed whether plaintiff placed her mental condition at issue. *Phifer* involved a motor vehicle accident in which plaintiff suffered bodily injury. Plaintiff filed a complaint alleging that she "suffered great pain and anguish both in mind and body and will in the future continue to suffer." *Id.* ¶ 4. Plaintiff's response to defendant's interrogatories claimed "psychiatric, psychological and/or emotional injuries," as a result of the accident. *Id.* ¶ 28. In her deposition, plaintiff described her injuries as including anxiety, memory loss, difficulty multitasking, headaches, frequent episodes of crying and irrational fears interfering with her ability to drive. *Id.* ¶ 29. Plaintiff also disclosed two expert witnesses. *Id.* ¶ 30. The depositions and medical records from those doctors showed that they performed cognitive testing and treated plaintiff for anxiety, lowered professional confidence,

panic attacks, and depression. *Id.* This court concluded that "plaintiff did not restrict her damage claims to physical/neurological injuries." *Id.* ¶¶ 28, 31. This court held that plaintiff affirmatively placed her own mental condition at issue. *Id.*

¶ 15    *Doe v. Great America*, 2021 IL App (2d) 200123, reached the same result as *Phifer*. Plaintiff filed a complaint against Six Flags Great America seeking damages in connection with a battery at defendant's amusement park. *Id.* ¶ 3. The complaint alleged that Jane Doe suffered a head injury when she was attacked by a group of "youths" and the park employees failed to intervene. *Id.* Jane Doe answered interrogatories indicating that she was not claiming any psychiatric, psychological, or emotional injury. *Id.* ¶ 4. Subsequently, Jane Doe committed suicide. *Id.* ¶ 5. Plaintiff amended the complaint, adding a claim of wrongful death relating to Jane Doe's suicide. *Id.* Plaintiff alleged that, as a proximate cause of defendant's acts or omissions, Jane Doe "suffered severe, debilitating and permanent physical injuries that caused her conscious pain and suffering, including physical injuries to her brain that rendered her bereft of reason and suicidal." *Id.* Defendant moved to compel the disclosure of Jane Doe's mental health records, arguing that plaintiff placed Jane Doe's mental condition at issue by alleging that defendant's acts or omissions caused her to commit suicide. *Id.* ¶ 7. The appellate court held that plaintiff affirmatively placed Jane Doe's mental condition at issue because "a suicide directly implicates a psychological condition or psychological damage." *Id.* ¶ 21.

¶ 16    By contrast, our supreme court addressed whether the plaintiff in *Reda* placed his mental condition at issue and reached the opposite conclusion. The complaint alleged that plaintiff suffered "injuries of a personal and pecuniary nature" and caused damages, including loss of society, companionship, and affection. *Id.* at 50. Plaintiff's response to interrogatories explained that he suffered injuries to his leg that resulted in disability, disfigurement, and pain and suffering.

Plaintiff also suffered a stroke, heart problems, and kidney problems. *Id.* at 51-52. Plaintiff's wife testified in her deposition that plaintiff suffered from headaches, loss of memory, decline in comprehension, difficulties in performing daily activities, and changes in personality. *Id.* at 57.

¶ 17 Our supreme court held that plaintiff did not affirmatively introduce his mental condition. *Id.* at 58. According to the court, neurological injury such as a stroke or brain damage does not automatically place plaintiff's mental condition at issue. *Id.* The court concluded that the allegations in the complaint and the statements in discovery demonstrated that the injuries he suffered were physical and neurological in nature and distinct from psychological damage. *Id.*

¶ 18 Similarly, the First District held that cognitive impairments consistent with a traumatic brain injury do not place the plaintiff's mental condition at issue. *Yamini*, 2019 IL App (1st) 180566, ¶ 24. In that case, plaintiff filed a medical malpractice claim after she developed meningitis following surgery. *Id.* ¶ 1. Evidence showed that plaintiff suffered impaired cognitive presentation after developing meningitis and presented symptoms consistent with traumatic brain injury. *Id.* ¶ 24. *Sparger* distinguished the case from one in which the plaintiff alleged pain and anguish in both mind and body and psychiatric, psychological, and emotional injuries. *Id.* ¶ 28.

¶ 19 Here, the complaint alleged that defendants negligently treated plaintiff's overdose. The complaint alleged that defendants' negligence caused Donald to suffer "mental anguish and emotional distress." This is a specific allegation of psychological and emotional damages. Like *Phifer* and *Doe*, plaintiff affirmatively introduced Donald's mental condition as an element of her survival claims. Consequently, we find that plaintiff waived the therapist-recipient privilege.

¶ 20 Plaintiff attempts to distinguish *Phifer*. Plaintiff notes that the plaintiff in *Phifer* responded to discovery by indicating that she sought damages for psychiatric and psychological injury. She also disclosed two expert witnesses who performed cognitive testing and treated plaintiff for

anxiety, lowered professional confidence, panic attacks, and depression. By contrast, in response to defendants' motion to compel, plaintiff in this case asserted that she was not seeking damages for psychiatric, psychological, or emotional damages on behalf of Donald. Plaintiff also did not disclose any of Donald's mental health providers as potential witnesses. In plaintiff's view, she must do more than simply allege mental pain and suffering to affirmatively place Donald's mental condition at issue. We disagree. *Phifer* does not hold that a party must do more than allege psychological damages. There are many ways a party may affirmatively place an individual's mental condition at issue. As noted above, "[a] party may introduce his or her mental condition in several ways during the course of litigation, including, *e.g.*, in the pleadings, answers to written discovery, a deposition, in briefs or motions, in argument before the court, or by stipulation." *Reda*, 199 Ill. 2d at 61. The complaint in this case placed Donald's mental condition at issue as an element of damages.

¶ 21     In reaching our conclusion, we distinguish both *Reda* and *Sparger.* Unlike this case, the plaintiffs in *Reda* and *Sparger* did not specifically allege psychological or emotional damages in their complaints. Instead, both cases focused on the types of injuries which affirmatively place an individual's mental condition at issue. The courts in both *Reda* and *Sparger* determined that traumatic brain injury alone did not directly implicate psychological damage. The complaint here does not allege traumatic brain injury, but specifically alleges psychological and emotional damages. Thus, as the complaint currently stands, it places Donald's mental condition at issue and defendants must be prepared to fully litigate the issue of emotional damages as framed in the complaint. Such preparation obviously requires relevant discovery.

¶ 22     Our analysis, however, does not end there. As both parties pointed out on appeal, the trial court failed to perform the safeguard of an *in camera* review of the records to determine which, if

any, records should be disclosed. Instead, the court directed plaintiff to provide the release authorization form directly to defendants. To the extent the order required plaintiff to provide the authorization and records directly to defendants, the court erred. Before releasing any records, the court must first make a determination "after *in camera* examination of the evidence, that it is relevant, probative, and otherwise clearly admissible; that other satisfactory evidence is not available regarding the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from any injury which disclosure is likely to cause." 740 ILCS 110/10(a)(2) (West 2020). We modify the order to reflect that the records must first be produced under seal directly to the trial court for *in camera* inspection.

¶ 23    Finally, both parties agree that we should vacate the contempt order and the accompanying fine against plaintiff because she acted in good faith in seeking review of the trial court's discovery order. We agree. Though we affirm the trial court's order as modified, we find it proper to vacate the finding of contempt and the $100 fine. See *Borg Warner, Inc. v. Kuhlman Electric Corp.*, 2014 IL App (1st) 131824, ¶ 35.

¶ 24                                III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm in part and vacate in part, as modified, the judgment of the circuit court of Tazewell County.

¶ 26    Affirmed in part and vacated in part, as modified.